## CLARK v. RIDGDELL.*

### No. 1736.

Court of Appeal of Louisiana. First Circuit.

June 30, 1937.

Rownd & Tucker, of Hammond, for appellant.

A. B. Pierson, of Ponchatoula, for appellee.

DORE, Judge.

Plaintiff sues to recover the possession of a mule, two cows, one bedstead, spring, mattress, and a shotgun which she claims as owner, and also the sum of $87, which amount she claims to have loaned defendant from time to time within the two years prior to the filing of the suit. She obtained a writ of sequestration for the

*Rehearing denied July 30, 1937.

movable property, which property was subsequently bonded by the defendant.

Defendant claims ownership of all the property except the shotgun, which he returned to plaintiff, and denies that he owes the money claimed by plaintiff. A judgment was rendered by the city judge rejecting plaintiff's claim for the $87 and recognizing plaintiff as the owner of the sequestered property and ordering it restored to the possession of plaintiff. The defendant alone has appealed; and since the appeal and the perfection thereof, the plaintiff-appellee died, and by order of this court George A. Clark, in the capacity of administrator of the succession of Mrs. Hattie Clark, plaintiff-appellee herein, was substituted as party plaintiff-appellee with authorization to prosecute the action and stand in judgment in the same manner as the deceased herself could have done.

The sole question before us is the ownership of the movable property, and the issue involves purely a question of fact.

Plaintiff is the grandmother of defendant. It seems that plaintiff and her son, George Clark, together with defendant, were living on a small farm owned by the plaintiff in the year 1933. George Clark and the defendant were engaged in small farming operations. Plaintiff seems to have had some money, and owned the mule and a cow. The defendant claims that he bought this mule and spotted cow from plaintiff on July 1, 1933, for the sum of $75.

It is claimed by defendant that he borrowed $75 from his brother and paid this amount to his grandmother for the cow; that he prepared a bill of sale for his grandmother to sign and she started to sign the bill of sale, and couldn't see well enough to sign her name and told him to sign it for her; that he then signed her name for her and she put a cross-mark opposite her name. The plaintiff denies that she received any money from defendant and denies that she sold him this mule and cow. She says that the defendant drew up a bill of sale for the mule and cow and asked her to sign it, stating that if she died he would not get anything as her folks would take everything; that she started to sign the paper and told him she could not finish it; that she backed out of signing the paper, and did not make the cross nor touch the pen for him to make the mark.

It is evident that plaintiff can sign her name, as she signed the bond for the writ

of sequestration and also the statement of account filed in evidence. The bill of sale on which defendant relies is in evidence and shows that plaintiff started to sign it, but the signature is not complete. This fact seems to bear out her statement, as there would seem to be no reason for her to make her mark as she could sign her name. At that time she was on friendly terms with her grandson and seems to have been anxious to help him and did help him. She let him use the cow and mule without charge in order to help him with his crop and in supplying milk for his family. This mule and cow had cost plaintiff $100, and it is not likely that she would have sold them for $75, nor is it probable that defendant would have paid out $75 cash when he seems to have had free use of the mule and cow without paying out anything. In any event, we cannot say that the trial judge was in error in reaching the conclufindings of fact.

The other cow was purchased from Mrs. Shelton in August, 1933. There is much conflict in the testimony as to the nature of this purchase. At that time a Mr. Pierson was living on George Clark's place and working for him, and George Clark, or his mother, the plaintiff, furnished Pierson with a cow to milk, but this cow was turned back to a Mr. Hoover. George Clark states that his mother then gave him $20 with which to purchase the cow for Pierson to use and that he and defendant went to purchase the cow from Mrs. Shelton; that he let defendant have the $20 to make the deal, as he thought defendant could make a better bargain; that after looking at the cow, defendant went in the house and closed the deal with Mrs. Shelton for the cow; that the cow was bought with his mother's money and was bought for her.

The defendant claims that he bought this cow with his own money and obtained a bill of sale from Mrs. Shelton to him; that he made the trade and wrote out the bill of sale himself. There can be no dispute as to this bill of sale being in the name of the defendant. But both plaintiff and George Clark testify that the money was furnished by plaintiff, who did not know that the bill of sale was made out in the name of defendant until several weeks thereafter at which time she protested.

As George Clark had furnished a cow for Pierson, it seems reasonable that, as this other cow was turned over to Pierson

for use, defendant would have had no reason to purchase a cow for Pierson to use, except, as he says, through friendship. The trial judge heard and knew the witnesses and we cannot say that he erred in his findings of fact.

Nor can we say that the judge erred in finding that the bedstead, spring, and mattress belong to the plaintiff.

It is argued by counsel for defendant that as the trial judge believed the testimony of the defendant in preference to that of plaintiff on the question of the loan of money, there is no reason for believing her testimony in preference to the defendant on the ownership of the property. However, there is some corroboration of plaintiff's testimony, both by direct testimony and circumstances, on the question of ownership, as has already been indicated, whereas on the question of the loan of this money this corroboration does not exist and besides the testimony is vague, and not as certain as that dealing with the movables.

We do not see wherein the lower court manifestly erred. For these reasons, the judgment appealed from is affirmed.